## SIOUX TRIBE OF INDIANS OF LOWER BRULE RESERVATION, S. D. v. UNITED STATES.

### Appeal Docket No. 10–52.

United States Court of Claims.

May 5, 1953.

Ralph H. Case, Washington, D. C., for appellants.

Maurice H. Cooperman, Washington, D. C., with whom was J. Edward Williams, Acting Asst. Atty. Gen., for appellee.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

MADDEN, Judge.

The appellants complain of the decision of the Indian Claims Commission, Docket No. 78, which denied their claim for compensation for lands which, they say, belonged to them, but were taken and sold by the United States.

Prior to 1889 the Great Sioux Reservation contained some 26,000,000 acres of land located in North and South Dakota. By an agreement embodied in the Act of March 2,

1889, 25 Stat. 888, I Kapp. 328, the Sioux agreed to move to and settle upon six separately described reservations, which were carved out of the Great Reservation, and also agreed that the balance of their land, not included in the six reservations should be sold by the United States at specified prices per acre, for the account of the Sioux.

One of the six reservations to be created was the Lower Brule Reservation, with which we are here concerned. Section 5 of the 1889 agreement specified the proposed boundaries of that reservation. For our purposes, the only boundary of importance is the southern one. The agreement said that the southern boundary should be, along the greater part of its length, on the 44th parallel of north latitude. The location of the 44th parallel was, at the time of the agreement, completely unmarked, and so far as appears there had been no discussion between the parties as to where the line would lie, when surveyed.

After the agreement had been made, the United States proceeded to survey the reservation and mark its boundaries with monuments. In 1890 the Surveyor General of the United States directed the surveyor to locate the 44th parallel by measuring 11 miles, 38.34 chains north from the First Standard Parallel, which was at the time a surveyed, monumented General Land Office line. The surveyor followed this instruction and marked and monumented the supposed 44th parallel accordingly, and the line so marked was regarded as the proper southern boundary of the reservation until 1932.

In 1923 the Sioux, pursuant to a special jurisdictional act, June 3, 1920, 41 Stat. 738, sued the United States for an accounting for all the lands which had been opened for settlement and disposed of under the Act of 1889. The General Accounting Office in 1932 submitted its report, which, in its Vol. 6, pp. 3389–90 said that the location of the 44th parallel by the surveyor in 1890 did not agree with the location of the parallel as determined by the United States Geological Survey, which had located the parallel more than a mile south of the surveyed line. In 1934, the Sioux, on the basis of this report, amended their petition to include a claim for the more than 30,000 acres of land which would have been included in the Lower Brule Reservation if the United States Geological Survey line had been its southern boundary. This court in its decision in Sioux Tribe of Indians v. United States, 64 F.Supp. 312, 105 Ct.Cl. 725, 809, referred to the surveyed line as an "erroneous survey" but held that since the amended petition relating to this land had not been filed within the specified five years after the enactment of the jurisdictional act, the Sioux could not recover on their claim.

Upon the enactment of the Indian Claims Commission Act, the appellants filed their claim before the Commission. The Commission decided against them on the ground that the line surveyed and monumented in 1890 was the officially determined boundary recognized by the parties, and was the correct boundary. The Commission relied on a number of decisions in boundary litigation between states of the United States, and followed the doctrines laid down by the Supreme Court in those cases. State of Virginia v. State of Tennessee, 148 U.S. 503, 13 S.Ct. 728, 37 L.Ed. 537; State of New Mexico v. State of Colorado, 267 U.S. 30, 45 S.Ct. 202, 69 L.Ed. 499.

We think the authorities relied on by the Commission are not applicable. The relation between these Indians and the United States in 1890 was not that of two equal sovereigns but was, in effect, that of ward and guardian.

When the agreement was made, neither party could have walked out on the ground and pointed out where the southern line of the reservation would or even probably would, turn out to be. They described it in abstract terms, the 44th parallel. But whatever those abstract terms might turn out to include, the Indians were entitled to. They had no part in the survey, and hence were not estopped to assert that it was erroneous. It is said that they recognized the surveyed line as the true line for some forty years. But they had no reason to suppose that it was not the true line until

the General Accounting Office report in 1932 called attention to the error. Since the Indian Claims Commission Act gave the Indians the right to prosecute their claims regardless of the lapse of time, we think the appellants are not barred by any doctrine of acquiescence in a marked boundary.

■ The more difficult question is whether the 1890 survey was erroneous. The Government contends, and the Indian Claims Commission in effect held that the 44th parallel in 1889 when the agreement was made and in 1890 when the survey was made was, for the purposes of the agreement, wherever surveyors, using the instruments and the knowledge of those times, found it to be; that accuracy within a mile in the location of a parallel of latitude was as much as could be expected. The argument has force, and between equals dealing at arms length might be controlling. But when the Indians in 1889 agreed to the 44th parallel as the southern boundary of their reservation, they had, so long as the line remained unsurveyed, the right to the land included within that boundary, accurately determined. They were excluded from some of that land because of the inaccuracy of the instruments used by their guardian in marking on the ground the boundaries agreed to. When the guardian later acquired more accurate instruments, and greater skill in surveying, and determined that the 44th parallel was not where its surveyor had located it, we think it was the guardian's duty to account to the ward for the land which the ward had lost and the guardian had gained, by reason of the error in the survey.

The appellant points to our decision in Sioux Tribe of Indians v. United States, 97 Ct.Cl. 391, where we held that a surveying error which operated to the advantage of the Indians and to the prejudice of the United States should be corrected. There the error resulted from mistaken assumptions by the surveyor, because of the limited knowledge which surveyors had in those days.

■ The Government urges, apparently as a counterclaim, that in the same survey of which the appellant complains, the surveyor made an error to the prejudice of the Government, which involved an acreage somewhat larger than that involved in the southern boundary. The Commission did not find it necessary to pass on this contention. We will not discuss it at length but will say that we think it has no merit whatever. Obviously, when the parties agreed that the northern line should run due west from Old Fort George to the western line of Presho County, they were referring to that line as it had been a few years earlier, and were not intending that their due west line should be bent some six miles to the south to reach the new northern boundary of Presho County as recently changed by the State Legislature.

The decision of the Indian Claims Commission is reversed, and the case is remanded to it for further proceedings in conformity with this opinion.

HOWELL, WHITAKER and LITTLETON, Judges, and JONES, Chief Judge, concur.