SIOUX TRIBE OF INDIANS OF the
LOWER BRULE RESERVATION,
SOUTH DAKOTA

v.

The UNITED STATES.

Appeal No. 3–62.

United States Court of Claims.

April 5, 1963.

Marvin J. Sonosky, Washington, D. C., for appellant and appellee, Strasser, Spiegelberg, Fried, Frank & Kampelman, John S. White, and Joel R. Feidelman, Washington, D. C., on the briefs.

Maurice H. Cooperman, Washington, D. C., with whom was Asst. Atty. Gen. Ramsey Clark, for appellee and appellant.

Before JONES, Chief Judge, REED, Justice (Ret.), sitting by designation, and WHITAKER, LARAMORE and DURFEE, Judges.

WHITAKER, Judge.

This case is before the court on cross-appeals from the final determination of the Indian Claims Commission awarding plaintiff the sum of $71,747.63, including interest of $52,929.52, but offsetting against this sum a portion of the sum of $157,404.46 found to have been expended for the plaintiff as gratuities. One of defendant's counterclaims was allowed to the extent of $658.07, but the other two were disallowed.

The appeals present these questions: (1) whether the facts present a case of the taking of plaintiff's lands without the payment of just compensation and, hence, whether interest on the value of the lands was properly allowable; (2) whether defendant's third counterclaim for $248,-757.30 was properly disallowed; and (3) whether any part of the gratuities of $157,404.46 should have been allowed as an offset.

On the first question we think there can be no doubt that there was a taking of plaintiff's lands under the Fifth Amendment to the Constitution.

By the Act of March 2, 1889, 25 Stat. 888, six separate reservations were carved out of the Great Sioux Reservation, including one for plaintiff. The southern boundary of the reservation for plaintiff was described as the 44th parallel of latitude. Later, defendant undertook to locate the 44th parallel. As so located, it was marked on the ground, and the land lying outside the southern boundary, as so marked, was sold as public lands. La-ter, it was discovered that the said boundary had been improperly located and that lands, properly a part of the reservation, had been sold as public lands. It is for just compensation for these lands that plaintiff brought its proceeding.

■ Defendant says that it used the best instruments then available in determining the 44th parallel, and otherwise used due care and, hence, that the boundary as so determined must be considered as the correct boundary. As we said in our former opinion in this case, 111 F. Supp. 766, 125 Ct.Cl. 439, this is plainly untenable. The southern boundary was fixed as the 44th parallel, not as the 44th parallel as *determined by defendant*.

■ Defendant says an erroneous survey does not constitute a taking. This is correct, but a taking did occur when the United States appropriated the lands actually belonging to plaintiff and sold them. United States v. Creek Nation, 295 U.S. 103, 55 S.Ct. 681, 79 L.Ed. 1331.

■ Although it might be said that there was no intentional appropriation of these lands, there was, nevertheless, a taking under the Fifth Amendment. Under earlier opinions of the Supreme Court, e. g., Tempel v. United States, 248 U.S. 121, 39 S.Ct. 56, 63 L.Ed. 162 (1918), it was said that it was necessary, to support a judgment for the taking of property by the United States, that there be a promise, express or implied, to pay for the lands taken. Later it was said that an implied promise to pay arises from the constitutional provision that lands shall not be taken without the payment of just compensation. It is the taking and the failure to pay just compensation that gives rise to the cause of action. United States v. Dickinson, 331 U.S. 745, 67 S. Ct. 1382, 91 L.Ed. 1789; United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206; Jacobs v. United States, 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142; Cotton Land Co. v. United States, 75 F.Supp. 232, 233, et seq., 109 Ct.Cl. 816, 829, et seq.; Pashley v. United States, 156 F. Supp. 737, 140 Ct.Cl. 535; Richard et al. v. United States, Ct.Cl., 282 F.2d 901.

On the second question, in the Indian Claims Commission, defendant asserted as an offset, against any amount to which it might be determined plaintiff was entitled, the amounts expended by defendant in the purchase of lands for plaintiff under the authority of section 5 of the Act of June 18, 1934, 48 Stat. 984. The Indian Claims Commission Act of August 13, 1946, 60 Stat. 1049, permits the offset of amounts expended gratuitously for a plaintiff tribe, with certain exceptions which include all amounts expended under the Act of June 18, 1934, supra, other than amounts expended under section 5 thereof, "if it finds that the nature of the claim and the entire course of dealings and accounts between the United States and the claimant in good conscience warrants such action." The Indian Claims Commission found, in finding 34:

"The Commission finds that the course of dealings between plaintiffs and defendant has not been such that the defendant is prohibited from setting up against the award previously entered against it any credits or offsets which it may have that are not precluded by Section 2 of the Indian Claims Commission Act, 60 Stat. 1049."

Plaintiff complains that this is supported by no evidentiary findings. Under the 1934 Act, the only claim which the Commission is authorized to offset against an award is one where, pursuant to the authority of section 5 of the Act, the Secretary of the Interior has purchased lands for Indians. That is the claim before us. Congress plainly contemplated the offset of such a claim. Nor do we think the Commission was required to set out in detail the entire course of dealing between the tribe and the United States to support its finding that the off-set was allowable. That would require voluminous findings in each case in which an offset was claimed. The Commission was merely directed to take them into consideration in determining whether in good conscience the offset should be allowed. In good conscience it thought it ought to be. We do not think it was required to set out all the things that went toward satisfying its conscience. This is especially true in the case of an offset under section 5 of the 1934 Act, which Congress so plainly thought should be allowed.

Defendant also complains of the disallowance of its counterclaim for $248,757.30. While this amount might have been used, and might still be used, as an offset against an award to the plaintiff, it seems plain that the defendant was not entitled to assert it as a counterclaim.

We held in Sioux Tribe of Indians v. United States, 64 F.Supp. 303, 105 Ct. Cl. 658, that the excess of expenditures over and above an amount necessary to discharge the Government's liability to plaintiff under the Treaty of 1889 was a gratuitous expenditure. Gratuitous expenditures, of some sorts, may be deducted from amounts due a tribe, but of necessity they are not the subject of a counterclaim. The United States cannot give these sums to the Indians, and then sue the Indians to recover them, although it may offset them against a claim that it has not paid them all it was legally obligated to pay. The Commission was, therefore, correct in disallowing this counterclaim.

It results that the determination of the Indian Claims Commission is affirmed.

DAVIS, Judge, did not participate in the consideration and decision of this case.