562

MINNEAPOLIS POST OFFICE RIFLE
AND PISTOL CLUB, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 93–452C.

United States Court of Federal Claims.

Jan. 10, 1995.

Randall D.B. Tigue, Minneapolis, MN, atty. of record, for plaintiff.

Lisa B. Donis, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger, for defendant. David M. Cohen, Director, and Cary Katznelson, U.S. Postal Service, of counsel.

## OPINION

FUTEY, Judge.

This case is before the court on plaintiff's motion for partial summary judgment and defendant's cross motion for summary judgment. The court previously dismissed Count I of plaintiff's amended complaint denying plaintiff declaratory and injunctive relief.[1] *Minneapolis Post Office Rifle and Pistol Club, Inc. v. United States*, No. 93–452C (Fed.Cl. filed March 15, 1994). Plaintiff argues that defendant has taken action which constitutes a "taking" under the Fifth Amendment, and, therefore, plaintiff is entitled to compensation. Defendant counters that plaintiff has no valid property interest and, therefore, there has been no taking without just compensation.

### Factual Background

Plaintiff, Minneapolis Post Office Rifle and Pistol Club, Inc., was incorporated in the State of Minnesota on September 28, 1948; it is the successor to an unincorporated association formed in 1929. Defendant is the United States. Plaintiff is an organization open to "any employee of the United States Postal Service who has successfully completed his probationary period, or any other classified federal government employee" who pays dues and initiation fees. As stated in plaintiff's by-laws and constitution, the object of the organization is "the encouragement and promotion of organized rifle and pistol shooting." The organization is affiliated with the National Rifle Association.

In 1935, plaintiff's predecessor, the unincorporated Rifle and Pistol Club, was given permission to purchase, install and maintain, at its sole cost and expense, rifle and pistol range equipment in the basement of a post office in Minneapolis, Minnesota. In addition to its membership, the gun range was used for training United States Postal Service employees who were required to carry firearms.

The organization continued its use of the basement until 1964, when there was a change in regional headquarters from Chicago to Minneapolis. The basement space, where the rifle and pistol club was located, was needed to store records. Consequently, plaintiff removed the range equipment from the area.[2] In 1970, a separate headquarters was built, and plaintiff reopened the range, re-establishing the arrangement which previously existed.

In 1980, the United States Postal Service eliminated all armed employee positions, and it became no longer necessary for plaintiff to provide firearm training to these employees. The Postal Inspection Service employees, however, continued to use the gun range for training, and plaintiff was permitted to continue its use of the facility.

In 1986, plaintiff wished to recondition the gun range, but was reluctant to do so without some type of formal agreement. In February of 1986, plaintiff met with A. Cooper McCauslen, the Field Division Manager/Postmaster of the Minneapolis Post Office. On July 22, 1986, plaintiff submitted a written proposal to Mr. McCauslen, but before any action was taken on the proposal, he took a month's vacation. During that time the acting officer in charge, in reaction to a shooting by a postal employee in Edmond, Oklahoma, closed the rifle and pistol range. After Mr. McCauslen returned, however, the range was reopened.

Mr. McCauslen requested that the Office of Regional Counsel of the United States

---

1. The remaining counts of plaintiff's amended complaint will be decided in this opinion even though plaintiff terms its summary judgment motion "partial."

2. In plaintiff's terms it "agreed to allow the post office department to occupy the space occupied by the rifle and pistol range." (*Plaintiff's Motion p. 2*).

Postal Service in Chicago, Illinois, review plaintiff's proposal.[3] Mr. McCauslen sought assurances that the proposal was in compliance with all applicable laws and regulations. In response, an assistant regional counsel sent a letter to Mr. McCauslen adding a few provisos to the proposal:

a. The most important legal documents with respect to potential Postal Service liability are the signed releases. Therefore, the execution of a release should be a requirement for the use of the range. The club cannot agree on behalf of all members that they *will* execute the release.

b. In general, I would recommend that you consider implementing items 2, 4, 5, and 6 as local rules of the Post Office regarding the use of the Range and that a separate agreement with the club not be entered into. The club should be responsible for setting and maintaining its standards for membership. This would avoid the Postal Service being placed into a situation of agreeing to monitor compliance of the agreement.

c. The Club may wish to incorporate any or all of the items in its official bylaws, if applicable.[4]

While nothing in the written documents suggest an agreement by the post office assuring plaintiff perpetual use of the basement, plaintiff avers it received "verbal assurances" from McCauslen.[5] Apparently relying on these assurances, plaintiff expended $13,650.00 in range equipment; $2,141.67 in

transportation, set up, installation and sound control costs; and $5,892.50 for lockers. Installation of the equipment was done by members. Plaintiff avers that the range's worth is approximately $50,000.00.

On April 1, 1992, the Division Master/Postmaster, William J. Brown, issued a notice: The provisions of 39 C.F.R. § 232.1(*l*) provide as follows:

NO PERSON WHILE ON PROPERTY SHALL CARRY FIREARMS, OTHER DANGEROUS AND DEADLY WEAPONS OR EXPLOSIVES, EITHER OPENLY OR CONCEALED, EXCEPT FOR OFFICIAL PURPOSES

Effective immediately, bringing, storing, or using firearms of any kind, on postal premises is prohibited.

Accordingly, access to the Minneapolis Post Office Gun Range is strictly limited to Postal Inspectors and Postal Police Officers. The Minneapolis Post Office will coordinate with the Postal Inspection Service the return of the employees' personal property on the gun range.[6]

Plaintiff was thereafter restricted from the gun range. Plaintiff complains that defendant continues to occupy the range, for its own use, entirely appropriating the equipment, facilities, lockers, and other property installed by plaintiff.

Defendant does not dispute that the club has a property interest in the personal prop-

---

**3.** The proposal, finalized on December 3, 1986, reads as follows:

  1. The club agrees to furnish its own liability insurance and provide a copy of the policy to the installation head.

  2. The club agrees to continue to maintain the range in a clean and safe manner in accordance with all applicable local and federal regulations.

  3. Membership in the club will be restricted to postal employees who have completed a year probationary period and have demonstrated that they meet the standards of conduct and performance set by the club membership.

  4. The club agrees to provide locked security for all weapons and ammunition in the range facility.

  5. Members will bring weapons to and from the range by the most direct route in an unload-

ed and locked condition, cased and out of open view.

  6. The club will work in conjunction with the Inspection Service to ensure that official Postal Service needs for the range are given first priority.

  7. The Post Office Rifle and Pistol Club agrees that all members will sign a waiver releasing the Post Office and its affiliated departments from any liability for functions that are directly related to the use of the indoor range.
(*Plaintiff's Motion p. 6*).

**4.** *Plaintiff's Motion p. 5.*

**5.** *Plaintiff's Motion p. 5.*

**6.** *Plaintiff's Motion p. 9.*

erty which remains at the gun range.[7] Indeed, the government insists that plaintiff has always been free to retrieve its personal property from the range. Nevertheless, plaintiff has refrained from doing so.

Plaintiff moves for summary judgment based on a "taking" under the Fifth Amendment, and requests compensation for its loss. Defendant opposes plaintiff's motion and moves for summary judgment claiming plaintiff has no valid property interest, and there has been no taking without just compensation.

## I. *Summary Judgment*

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Jay v. Secretary, DHHS*, 998 F.2d 979 (Fed.Cir. 1993). A fact is material if it might significantly affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), *cert. denied*, 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988); *Jay*, 998 F.2d at 982. If the moving party demonstrates an absence of genuine issues of material fact, then the burden shifts to the non-moving party to show that a genuine factual dispute does exist. *Sweats Fashions, Inc., v. Pannill Knitting Co.*, 833 F.2d 1560, 1563 (Fed.Cir.1987). Alternatively, if the moving party can show that there is an absence of evidence to support the non-moving party's case, then the burden shifts to the non-moving party to proffer such evidence. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553.

The court must resolve any doubts about factual issues in favor of the non-moving party, *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987); *Litton Industrial Products Inc. v. Solid State Systems Corp.*, 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefit of all presumptions and inferences run. *Jay*, 998 F.2d at 982; *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

■■■ The fact that both parties have moved for summary judgment does not relieve the court of its responsibility to determine the appropriateness of summary disposition. *Prineville Sawmill Co. v. United States*, 859 F.2d 905, 911 (Fed.Cir.1988). Summary judgment will not necessarily be granted to one party or another just because both parties have moved for summary judgment. *Corman v. United States*, 26 Cl.Ct. 1011, 1014 (1992) (*citing LewRon Television, Inc. v. D.H. Overmyer Leasing Co.*, 401 F.2d 689, 692–93 (4th Cir.1968), *cert. denied*, 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969)). A cross-motion is a party's claim that it alone is entitled to summary judgment. It does not follow, however, that if one motion is rejected the other is necessarily supported. The court must evaluate each party's motion on its own merit, and resolve all reasonable inferences against the party whose motion is under consideration. *Corman*, 26 Cl.Ct. at 1014.

## II. *Property Interest*

■■■ Plaintiff argues that when defendant prevented the club from using the gun range in the Minneapolis Post Office, it constituted a taking of its property within the meaning of the Fifth Amendment of the United States Constitution. The Fifth Amendment provides that "nor shall property be taken for public use, without just compensation." A taking cannot occur unless the claimant can first demonstrate that it has a legally cognizable interest in the "property." *Skip Kirchdorfer, Inc. v. United States*, 6 F.3d 1573, 1580 (Fed.Cir.1993); *Shanghai*

---

**7.** This property includes lockers, ammunition, desks, reloading tables, and bullet traps. (*Chitavero Aff. p. 34*).

*Power Co. v. United States,* 4 Cl.Ct. 237, 240 (1983). To state a claim under the takings clause, plaintiff must establish that it owned property which the United States took for a public purpose. This determination must be made on the basis of the particular facts of each case. *See United States v. Central Eureka Mining Co.,* 357 U.S. 155, 168, 78 S.Ct. 1097, 1104, 2 L.Ed.2d 1228 (1958). "[N]ot all economic interests are 'property rights'; only those economic advantages are 'rights' which have the law back of them, and only when they are so recognized may courts compel others to forbear from interfering with them or to compensate for their invasion." *Sharkey v. United States,* 17 Cl.Ct. 643, 647 (1989) (*quoting United States v. Willow River Power Co.,* 324 U.S. 499, 502, 65 S.Ct. 761, 763, 89 L.Ed. 1101 (1945)). Interests or rights which are not legally protected do not constitute "property" for purposes of the Fifth Amendment. *See Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1001–04, 104 S.Ct. 2862, 2871–73, 81 L.Ed.2d 815 (1984); *United States v. Willow River Power Co.,* 324 U.S. at 503, 65 S.Ct. at 764. Therefore, as defendant argues, the initial inquiry made by this court must be whether plaintiff had any property interest in the gun rage which could have been taken. *Hafen v. United States,* 30 Fed.Cl. 470 (1994).

■ Defendant did not seek out plaintiff to install the gun range. Instead, the basis of plaintiff's residency in the post office's basement began in 1935 when the club's predecessor was given *permission* to install the gun range *at its own cost.* Thereafter, defendant and plaintiff exercised a type of "barter" system. Plaintiff occupied defendant's basement, and, in return, plaintiff trained defendant's employees in gun proficiency.

When that training was no longer necessary, the government allowed plaintiff to stay on as a "guest."

The only type of agreement entered into by the parties was how the club and its members would utilize the space.[8] Indeed, plaintiff complains that before it renovated the range it was seriously concerned with the government's commitment, and desired to reach a formal agreement. Nevertheless, no such agreement was realized. Furthermore, the proposal finalized on December 3, 1986, does not reflect any such concern. The understanding makes no mention of the club's right to continual use, nor does it reflect any type of lease or rental contract. Indeed, despite plaintiff's apprehension, it admits that it merely relied on *verbal* assurances.

This conduct is seriously questionable in light of the circumstances which occurred before plaintiff actually renovated the range. Initially, plaintiff was excluded from the range between 1964–1970, when the government utilized the basement where the range was located for much needed storage space. Plaintiff brazenly states that it "allowed" defendant to use its own space. Secondly, immediately after giving the proposal to the government, plaintiff was excluded from the range for a month's period. Yet despite its reservations, plaintiff did not bother to crystalize its rights to occupy the range. Instead, as this court stated in its previous opinion, "the proposal merely set forth conditions for the use of the gun range, and provided assurances by plaintiff that it would responsibly regulate the conduct of its members." *Minneapolis Post Office Rifle and Pistol Club, Inc. v. United States,* No. 93–452C (Fed.Cl. filed March 15, 1994). The

---

8. The court agrees with defendant that plaintiff's lack of property interest is demonstrated by how plaintiff "used" the range. Property can be defined as something one has "free use, enjoyment, and disposal." *Buchanan v. Warley,* 245 U.S. 60, 74, 38 S.Ct. 16, 18, 62 L.Ed. 149 (1917). Further, property has often been determined by the "right to exclude others." *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1011, 104 S.Ct. 2862, 2877, 81 L.Ed.2d 815 (1984). That right has been defined as one of the most essential elements when determining property rights. *Kaiser Aetna v. United States,* 444 U.S. 164, 176, 100 S.Ct. 383, 391, 62 L.Ed.2d 332 (1979).

The gun club did not have free use and enjoyment of the range. Rather it was subject to the rules and regulations of the Postal Service. Moreover, it was the Postal Service, not plaintiff, who could restrict membership in the organization. Finally, as plaintiff admits, defendant controlled access to the range. Therefore, it was only on defendant's terms that plaintiff was allowed to enjoy the facility. This scenario more clearly depicts plaintiff as a guest rather than an owner.

court must question why plaintiff failed to memorialize an agreement as to its property rights in the range. The answer is clear; there never was an understanding with respect to occupancy of the range. The government was and is the owner of the space that plaintiff inhabited. Plaintiff was using government property, and should have known that its use could be discontinued at any time.

Additionally, plaintiff claims that it was denied access to the locker room area and offices. The government does not intend to deprive the club of its personal property which remains at the gun range. Defendant maintains that it continues to honor its notice that the club is permitted access to retrieve its personal property. Plaintiff, however, has refused to do so.

Notwithstanding defendant's accommodation, plaintiff insists that being able to remove the property is beside the point. Plaintiff argues that the range equipment is custom built for that property and is valueless outside it. Therefore, even if the government would allow plaintiff access to remove the property, a taking has still occurred. Plaintiff cites *United States v. General Motors,* 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311 (1945), stating that, "fixtures and permanent equipment destroyed or depreciated in value by the taking entitles the owner to compensation." *Id.* Plaintiff, however, erroneously relies on *United States v. General Motors,* by presupposing that it has a property right in the space itself. In *United States v. General Motors,* the government utilized a warehouse that *belonged* to General Motors. While the government was occupying that space, it damaged some of General Motors' personal property. On the other hand, in the instant case, the government is not occupying a building that belongs to the gun club, rather defendant is trying to utilize its own space which the club has "appropriated." Thus, the differences in the two cases cannot be reconciled. Plaintiff was allowed to remain on defendant's property subject to the rights and obligations of the government. The government, in the interest of personal safety, determined that existing regulations no longer permitted plaintiff to operate its

club. Therefore, defendant was entitled to request that its "guest" vacate the facilities.

As for the personal property which remained at the facility, even though defendant's actions did not effect a "taking," the court will apply the common law principle: a taking of real estate or a leasehold does not affect the ownership of personal property on, but not affixed to, the premises. 2 Nichols, Law of Eminent Domain, ¶ 5.58 (Rev.3d ed. 1989). Still, plaintiff cannot be compensated for its personal property because it was never taken. Plaintiff simply abandoned it. Apparently, plaintiff refused to remove its personal property because it cannot be used elsewhere. Plaintiff believes that defendant must compensate the club for rendering its items of personal property valueless.

Plaintiff's reasoning is flawed because it is not defendant's order that rendered the club's personal property worthless, but plaintiff's failure to accurately assess what conditions applied to its occupancy of the gun range. After defendant ordered plaintiff to vacate the facility, plaintiff had the same right a tenant ordinarily has to remove its personal property from the premises. *See Central Chrysler Plymouth Inc. v. Holt,* 266 N.W.2d 177, 180 (Minn.1978) (items of commercial equipment, although firmly attached to the realty, are trade fixtures and are removable by a tenant at the expiration of a lease except where such equipment is so inextricably a part thereof as to "savor of the realty," such as windows and doors). Just like a tenant who places removable fixtures on rented land, plaintiff was entitled to retrieve those items; but, if removal rendered them worthless, that was the risk plaintiff entered into knowingly.

### Conclusion

The court finds that the arrangement between defendant and plaintiff was that of host and guest. Plaintiff had *no* valid property interest which could have been taken. Although plaintiff is entitled to retrieve all improvements it made to the host's property, the club cannot be compensated for the loss of opportunity to utilize the basement of the Minneapolis Post Office (where the gun range is located). The court, however, in-

structs defendant to, once more, allow plaintiff free access to retrieve any removable fixture it desires from the range.

In accordance with this opinion, plaintiff's motion for summary judgment is denied. Defendant's cross motion for summary judgment is granted. The Clerk of the Court is directed to dismiss plaintiff's amended complaint and grant judgment in favor of defendant. No costs.