**Ellen MANNATT, et al., Plaintiffs,**

v.

**UNITED STATES of America, et al., Defendants.**

**No. CV F–92–5293 DLB.**

United States District Court, E.D. California.

Dec. 12, 1996.

Kirk K. Livermont, Independence, CA, for plaintiffs.

William Lee Shipley, Jr., Assistant United States Attorney, Fresno, CA, Robert D. Dellwo, Spokane, WA, Frederick I. Marr, Bishop, CA, for defendants.

## AMENDED ORDER RE DEFENDANT'S MOTION TO DISMISS

BECK, United States Magistrate Judge.

On September 3, 1996, the court heard the United States' motion to dismiss. Upon due consideration of the written and oral arguments of the parties and the record herein, plaintiffs' claims are dismissed with leave to amend.

Plaintiffs' complaint contains two claims. The first claim is labeled "Quiet Title Action" and is brought for the purpose of resolving a

real property boundary dispute between plaintiffs and the United States, as trustee of the Fort Independence Indian Reservation. The second claim involves a dispute concerning water rights along Oak Creek, which traverses the reservation. Defendant United States of America brings this motion to dismiss for a lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Federal Rule of Civil Procedure.

## FACTS AND PROCEDURAL HISTORY

Plaintiffs' property is located along the northern border of Fort Independence Indian Reservation. Plaintiffs' first claim involves a dispute concerning the location of the property line between plaintiffs' property and reservation property. Several surveys of the land in dispute have been conducted over the years. A survey was conducted in 1903, which located the disputed boundary line along a row of "old locust trees." A survey conducted in 1912 locates the boundary north of the locust tree boundary. In 1994 the Bureau of Land Management conducted a re-survey of the land and located the boundary north of the locust trees. In the first claim, plaintiffs Bruce Mather and Ellen Mannatt allege that the Indian tribe living at Fort Independence Indian Reservation wrongfully erected a fence ten feet north of the locust tree border, thereby reducing the size of their lot.

In the second claim, plaintiffs Mary Mairs and Ellen and Robert Mannatt allege that the tribe unlawfully blocked ditches that provide water to their property. The ditches divert water to plaintiffs' property from Oak Creek. Plaintiffs claim rights to water from Oak Creek based on a 1924 decree issued by the California Department of Public Works, acting under the Water Commission Act of 1913. The decree reflects a stipulation by interested parties concerning their relative water rights along Oak Creek. The decree allocates a portion of water from Oak Creek to the United States, as trustee of the Indian reservation. Plaintiffs' property was acquired from the reservation after the 1924 decree. Plaintiffs argue that they have a right to water allocated to the United States under the 1924 decree, in proportion to the

size of the property that they acquired from the reservation.

## DISCUSSION

When considering a motion to dismiss pursuant to Rule 12(b)(1), a district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.1988), *cert. denied*, 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989); *see, e.g., Land v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1011 n. 4, 91 L.Ed. 1209 (1947) ("when a question of the District Court's jurisdiction is raised ... the court may inquire by affidavits or otherwise, into the facts as they exist."); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir.1983) (consideration of material outside the pleadings did not convert a Rule 12(b)(1) motion into one for summary judgment); *see Peter Starr Prod. Co. v. Twin Continental Films*, 783 F.2d 1440, 1442 (9th Cir.1986).

The United States' motion to dismiss rests on the contention that it is immune from the claims set forth in plaintiffs' complaint. A party may bring an action against the United States only to the extent that the government has waived its sovereign immunity. The United States does not waive sovereign immunity by implication; any waiver must be unequivocally expressed. *Metropolitan Water Dist. of Southern Cal. v. U.S.*, 830 F.2d 139 (9th Cir.1987), affirmed *California v. U.S.*, 490 U.S. 920, 109 S.Ct. 2273, 104 L.Ed.2d 981 (1989).

### I.

■ The United States claims that the Quiet Title Act, codified as 28 U.S.C. section 2409a ("QTA"), governs plaintiffs' first claim, and that by its terms, the United States is immune from this suit. "The QTA permits the United States to be named as a defendant in lawsuits seeking the adjudication of disputed title to land, however, when the United States claims an interest in real property based upon that property's status as trust or restricted Indian lands, the Govern-

ment is immune from suit under the QTA." [1] *Metropolitan* at 143. "The QTA's limitations on actions challenging the United States' assertions of title apply without regard to the ultimate validity of those assertions." *State v. Babbitt,* 75 F.3d 449, 452 (9th Cir.1995).

In this case, the United States has a colorable claim to the real property in dispute as the trustee of Fort Independence Indian Reservation. Because the government's interest in the disputed property is based on the property's status as Indian Trust land, the government has not waived its immunity under the QTA.

■ Plaintiffs argue that the QTA does not govern this action because, although denominated a quiet title action in the complaint, it is really an action to establish boundary lines. The proposition that a boundary line dispute between an Indian tribe and private party is not an action to quiet title, and therefore is not governed by the QTA, was considered and rejected by the Ninth Circuit in *Metropolitan.* *See also State of Alaska v. Babbitt,* 38 F.3d 1068, 1074 (9th Cir.1994). In *Metropolitan,* the court, in considering whether the QTA exception to Indian lands applies to boundary disputes between Indian tribes and private parties, found that, "[a]lthough MWD may not be seeking to quiet title to the land in itself, it seeks a determination of the boundaries of the Reservation. The effect of a successful challenge would be to quiet title in others than the Tribe." *Metropolitan* at 143. The court thus concluded that the QTA was applicable, and that the Indian lands exception to the QTA preserved immunity of the United States.

■ Similarly, in the instant case, the boundary dispute between plaintiffs and defendants is governed by the QTA. Therefore, the immunity of the United States is

preserved by the Indian lands exception to the QTA.[2]

■ The United States is an indispensable party to any suit brought to establish an interest in Indian trust land. *Imperial Granite Co. v. Pala Band of Mission Indians,* 940 F.2d 1269, 1272 n. 4 (9th Cir.1991), citing *Minnesota v. United States,* 305 U.S. 382, 386, 59 S.Ct. 292, 294, 83 L.Ed. 235 (1939). Inability to join the United States as an indispensable party must result in dismissal. *Id.* citing *Carlson v. Tulalip Tribes,* 510 F.2d 1337, 1339 (9th Cir.1975). The instant action was brought to establish an interest in Indian land. Thus, the United States is an indispensable party. However, as discussed above, the United States is immune from plaintiff's first claim. Therefore plaintiff's first claim must be dismissed.

## II.

The United States argues that it is immune from plaintiffs' second claim for the "administration" of water rights along Oak Creek. Plaintiffs assert that the government has waived sovereign immunity pursuant to 43 U.S.C. section 666(a) ("The McCarran Amendment"). Section 666(a) of the McCarran Amendment provides:

> Consent is given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner or is in the process of acquiring rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary part of such suit.

Plaintiffs contend the McCarran Amendment should be applied retrospectively and that,

---

**1.** The QTA provides: "The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights. This section does not apply to trust or restricted Indian lands...."

**2.** Moreover, the Supreme Court has held that the QTA is the exclusive means by which adverse claimants can challenge the United States' title

to real property. *Block v. N.D. Ex rel. Bd. Of University & Sch. Lands,* 461 U.S. 273, 286, 103 S.Ct. 1811, 1819, 75 L.Ed.2d 840 (1983). "Congress's unambiguous retention of sovereign immunity against quiet-title actions affecting trust and restricted Indian lands applies without regard to the availability of an alternative means of review." *State of Alaska v. Babbitt,* 38 F.3d 1068, 1077 (9th Cir.1994).

consequently, the government should be deemed to have waived its immunity in regard to the 1924 adjudication. The government argues that it is not bound by the 1924 decree, because it did not waive its sovereign immunity under the McCarran Amendment until 1952.

The determination of whether the McCarran Amendment should be applied retrospectively requires consideration of two areas of statutory construction; waivers of sovereign immunity and standards concerning whether a statute applies retrospectively.

The rules of statutory construction pertaining to waivers of immunity require that statutes waiving the sovereign immunity of the United States be strictly and narrowly construed. *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983); *see also Lauritzen v. Lehman*, 736 F.2d 550, 555–56 (9th Cir.1984) "Waivers of immunity must be 'construed strictly in favor of the sovereign,' and not 'enlarged] ... beyond what the language requires.'" *Id.* at 685, 103 S.Ct. at 3277 (citations omitted); *Bradley v. School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974).

The rules of statutory construction that apply to determinations of whether a statute should be applied retrospectively were clarified by the Supreme Court in *Landgraf v. USI Film*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). In *Landgraf,* the Court stated that "[w]hen a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." *Id.*

The McCarran Amendment does not contain any express terms indicating that it is to be applied retrospectively. Therefore, to determine whether it applies retrospectively, the court must consider whether the statute would have a "retroactive effect" if applied retrospectively.[3] Prior to the McCarran Amendment, the United States had not waived its immunity in regard to general adjudications of water rights, and therefore was not bound by decrees issued pursuant to such adjudications. The retrospective application the McCarran Amendment in the instant case would cause the United States to be bound by the 1924 decree, whereas it would otherwise not be. Under these circumstances, retrospective application of the statute would impose new legal consequences on the United States in regard to the 1924 adjudication and therefore have a "retroactive effect." *See U.S. ex rel. Lindenthal v. General Dynamics Corp.,* 61 F.3d 1402, 1407 (9th Cir.1995). Accordingly, the McCarran Amendment should not be applied retrospectively absent "clear congressional intent" to the contrary. The legislative history does not contain language evidencing clear congressional intent to that regard.[4] *See* S.Rep. No. 755, 82d Congress,

---

3. The Ninth Circuit has clarified the terminology *Landgraf* employs by using the term "retrospective" to describe application of a new statute to events that occurred before its enactment, and reserving the term "retroactive" to describe a statute that, if applied, would attach new legal consequences to conduct or transactions already completed. *U.S. ex rel. Lindenthal v. General Dynamics Corp.,* 61 F.3d 1402, 1407 (9th Cir. 1995) citing *United States v. $814,254.76,* 51 F.3d 207, 210 n. 3 (9th Cir.1995). Thus, *Landgraf* teaches that courts should not apply "retroactive" statutes "retrospectively" absent clear congressional intent. *Id.* citing *Landgraf,* 511 U.S.

at 280, 114 S.Ct. at 1505. *U.S. ex rel. Lindenthal v. General Dynamics Corp.,* 61 F.3d 1402, 1407 (9th Cir.1995).

4. Beyond the lack of "clear congressional intent" reflected in the statute or legislative history, the legislative notes contain a letter to Senator McCarran from Mastin White, the Secretary of the Interior at the time, which further undermines the argument that congress intended the statute to apply retrospectively. In the letter to McCarran, White urges that "the United States should not in any way be prejudiced in the adjudication by the existence of a prior decree grant-

1st Session. Thus, under the above discussed rules of statutory construction, the McCarran Amendment cannot be construed to apply retrospectively.

■ Because the government did not waive its immunity in regard to the 1924 adjudication, it is not bound by that adjudication. Consequently, the government's rights cannot be "administered" under section 666(a)(2) of the McCarran Amendment. Furthermore, although district courts have jurisdiction for general adjudications under section 666(a)(1) of the McCarran Amendment, plaintiffs are not seeking a general adjudication in this claim. As plaintiffs have not brought claims cognizable under the McCarran Amendment, the government's immunity has not been waived thereunder.[5]

Plaintiffs have failed to meet their burden of establishing a waiver of the government's sovereign immunity, and consequently, have not established subject matter jurisdiction over the United States. *See Cato v. United States,* 70 F.3d 1103, 1107 (9th Cir.1995). The United States is an indispensable party to this claim. As discussed above, the inability to join the United States as an indispensable party must result in dismissal. *Imperial Granite Co. v. Pala Band of Indians,* 940 F.2d 1269, 1272 n. 4 (9th Cir.1991) citing *Carlson v. Tulalip Tribes,* 510 F.2d 1337, 1339 (9th Cir.1975). Consequently, plaintiff's second claim must be dismissed.

In view of the foregoing IT IS HEREBY ORDERED that the United States' motion to dismiss be GRANTED. Although the facts do not appear to provide a basis for a viable claim, in view of the liberal rules governing requests for leave to amend, plaintiffs' request for leave to amend is GRANTED. Plaintiffs shall have twenty (20) days from the date of service of this order within which to file and serve an amended complaint.

IT IS SO ORDERED.

---

ed in any adjudication to which it was not lawfully made a party;...." Although clearly not dispositive of the issue, Whites statement implies an assumption that the McCarran Act would not be binding on United States in regard to adjudications which occurred prior to the Act. The legislative notes do not include any response to the letter by McCarran.

5. Plaintiffs also claim that the court has jurisdiction of this claim based on the Indian Civil Rights Act. However, although plaintiffs refer- ence the Indian Civil Rights Act as a basis of jurisdiction on the first page of their complaint, the complaint does not contain a properly pleaded claim under the Indian Civil Rights Act. Therefore, I need not reach the issue of whether this court has jurisdiction under the Indian Civil Rights Act. However, case law suggests that private rights of action to enforce the Indian Civil Rights Act are generally, if not exclusively, brought in habeas corpus proceedings.