**Ellen MANNATT, Robert Mannatt,and Bruce Mather, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 98–689L.

United States Court of Federal Claims.

Nov. 6, 2000.

---

Kirk Kevin Livermont, Washington, D.C., attorney of record for plaintiff.

Thornton Withers Field, Department of Justice, Washington, D.C. Erica L.B. Niebauer, Department of the Interior, of counsel, Sacramento, California.

## OPINION

FUTEY, Judge.

This case is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction, or, in the alternative, for failure to state a claim upon which relief may be granted. Ellen Mannatt, Robert Mannatt, and Bruce Mather (plaintiffs) claim that the United States Bureau of Land Management (BLM) has improperly conducted a resurvey of their lands, resulting in takings of their property by inverse condemnation. The United States government (defendant), proceeding on behalf of BLM, argues that (1) the court must dismiss the action because plaintiffs' claims are essentially for quiet title in the disputed lands, and therefore cannot be addressed in takings claims before this court; (2) the Quiet Title Act, 28 U.S.C. § 2409a (1994) (QTA), is the only means by which plaintiffs may have their property interests determined, and a QTA action must be brought in federal district court; (3) plaintiffs have not exhausted their administrative remedies with BLM; and (4) the basis for plaintiffs' takings claims is a resurvey, which is a government agency action that cannot give rise to a taking under the Fifth Amendment. Plaintiffs argue that their property interests can be determined by this court, because theirs are not claims for title, but for just compensation for the taking of their property.

*Factual Background*

Located in Inyo County, California, the Fort Independence Indian Reservation (Reservation) is the result of two executive orders dated October 28, 1915, and April 29, 1916. The Reservation was created with the restriction that such creation would not impinge the property rights of private persons. Defendant, as trustee for the Fort Independence Indians, owns the real property that comprises the Reservation. Plaintiffs own lands adjacent to the Reservation, such ownership deriving from a land patent granted in 1885 (Mannatt/Mather Lot). Plaintiffs' lands run along the northern border of the Reservation. Plaintiffs also claim ownership, pursuant to a land patent granted in 1923, of another lot that is located southwest of the Mannatt/Mather Lot and is bordered by the Reservation on three sides (Mannatt Lot).

Plaintiffs allege that in 1992 Daniel Miller, Jr., the individual in possession of the Reservation lands adjacent to the Mannatt/Mather Lot, unilaterally moved a fence marking the northern boundary of the Reservation approximately 15 feet to the north, thus reducing the total area of the lot. A dispute over the boundary ensued, and in 1994 BLM began a survey of the lands in question to determine the proper boundary of the Reservation. BLM relied upon this "dependent resurvey,"[1] as it is referred to by defendant, to decide that the proper boundary for the Reservation was in fact 15 feet further north than previously believed. It therefore allowed the new boundary, marked by the fence moved north 15 feet by Mr. Miller, to remain. BLM claimed that the disputed property was in fact public land of the United States held in trust for the Fort Independence Indians. The resurvey also altered the boundaries of the Mannatt Lot, moving the eastern boundary 10 feet to the west, and therefore reducing the size of that lot as well.

Plaintiffs assert that this resurvey was in fact an "independent resurvey," or a survey conducted independent of previous boundary

---

1. A dependent resurvey is based on previous surveys. When BLM performs this type of survey it intends to restore original boundaries set by those previous surveys, not to set new ones. BUREAU OF LAND MGMT., U.S. DEP'T OF THE INTERIOR, MANUAL OF INSTRUCTIONS FOR THE SURVEY OF THE PUBLIC LANDS OF THE UNITED STATES 39 (1973); *see Keller v. United States*, 6 Cl.Ct. 724, 725 (1984) (explaining the difference between a dependent and independent resurvey, and quoting from the BLM manual).

lines, because earlier surveys conducted in 1903 and 1912 placed the boundary of the Mannatt/Mather Lot at a line of "old locust trees," a line located south of the new boundary determined by the 1994 resurvey. Plaintiffs also aver that the BLM resurvey ignored the boundaries created by the 1923 land patent for the Mannatt Lot. Plaintiffs maintain this independent resurvey violates the statute prohibiting the executive branch, including its agencies, from enlarging the boundaries of Indian reservations. Act of Mar. 3, 1927, ch. 299, § 4, 44 Stat. 1347, 1347. Only Congress has the power to make such changes. *Id.*

In 1992, plaintiffs filed claims in the United States District Court for the Eastern District of California. Plaintiffs eventually filed their Third Amended Complaint, which included the boundary dispute claims and claims for inverse condemnation under the takings clause of the Fifth Amendment. The district court dismissed plaintiffs' claims on the boundary dispute and transferred the inverse condemnation claims to this court. *Mannatt v. United States,* 951 F.Supp. 172 (E.D.Cal.1996), *aff'd* 185 F.3d 868 (9th Cir. 1999), *cert. denied* 528 U.S. 1138, 120 S.Ct. 983, 145 L.Ed.2d 933 (2000).

### Discussion

In ruling on a motion to dismiss for lack of jurisdiction under RCFC 12(b)(1), the court must accept as true the complaint's undisputed factual allegations and construe the facts in the light most favorable to plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see also Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir.1989); *Farmers Grain Co. v. United States,* 29 Fed.Cl. 684, 686 (1993). A plaintiff must make only a prima facie showing of jurisdictional facts through the submitted material in order to defeat a motion to dismiss. *See Raymark Indus. v. United States,* 15 Cl.Ct. 334, 338 (1988) (citing *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.,* 557 F.2d 1280, 1285 (9th Cir.1977)). If the undisputed facts reveal any possible basis on which the non-moving party might prevail, the court must deny the motion. *See Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683; *see*

*also Lewis v. United States,* 32 Fed.Cl. 59, 62 (1994). If, however, the motion challenges the truth of the jurisdictional facts alleged in the complaint, the court may consider relevant evidence in order to resolve the factual dispute. *See Rocovich v. United States,* 933 F.2d 991, 994 (Fed.Cir.1991); *see also Lewis,* 32 Fed.Cl. at 62.

In the alternative, the court will grant a motion brought under RCFC 12(b)(4), for failure to state a claim upon which relief may be granted, only if it appears beyond a doubt that plaintiff has failed to allege facts sufficient to support its claim. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Mostowy v. United States,* 966 F.2d 668, 672 (Fed.Cir.1992). In ruling on a RCFC 12(b)(4) motion to dismiss, the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to plaintiff. *Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (citing *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683; *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir.1991)). Nevertheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). "[L]egal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness." *Blaze Constr., Inc. v. United States,* 27 Fed.Cl. 646, 650 (1993) (internal quotations omitted).

The Fifth Amendment to the Constitution states that "private property" shall not "be taken for public use, without just compensation." U.S. CONST. amend. V. In order to present a valid claim for a compensable taking, a claimant must allege and prove by a preponderance of the evidence that (1) it has a specific property interest, and (2) the government has appropriated that interest, leaving the claimant without the use or benefit of that interest. *Lucas v. S.C. Coastal Council,* 505 U.S. 1003, 1027–29, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). Plaintiffs' takings claims are based on the doctrine of inverse condemnation. This type of taking involves a government assertion of

**152**

title, without actual invasion, over real property that in fact belongs to private owners. Such assertion thereby eradicates the private ownership of the land. *See Tabb Lakes, Ltd. v. United States,* 10 F.3d 796, 800 n. 3 (Fed. Cir.1993). Plaintiffs allege ownership in the disputed lands adjacent to the Reservation. They further allege that defendant first allowed the lands to be fenced off, and second asserted title over those lands. Plaintiffs have therefore met the two part test. The court finds that plaintiffs have stated takings claims upon which relief may be granted. *See Tabb Lakes,* 10 F.3d at 800.

The court must next make a determination on defendant's motion to dismiss for lack of subject matter jurisdiction. Defendant has moved for dismissal of plaintiffs' claims, asserting that this court does not have jurisdiction to determine plaintiffs' property interests in the disputed lands, if any exist. Instead, defendant states that such determination must be made in the district court in California where the property is located, in accord with the provisions of the QTA. Because the court is without jurisdiction to determine title in this case, defendant argues, plaintiffs cannot bring complete claims for compensatory takings. Defendant also states that plaintiffs did not exhaust administrative remedies through BLM before bringing suit in this court. Defendant maintains in addition that under the language of the pertinent statute, a resurvey of Indian lands, such as the one at issue in this case, cannot form the basis of a taking. Plaintiffs contend in opposition to these assertions that their claims are not controlled by the QTA, but instead are proper takings claims based on the Fifth Amendment, caused by the redrawing of boundary lines by effective governmental agency action, and therefore are squarely within this court's jurisdiction to hear such claims.

■ The Tucker Act provides the basis for the court's jurisdiction over takings claims. *See* 28 U.S.C. § 1491(a)(1) (1994) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded ... upon the Constitution ...."). This court must often make independent factual determinations of claimants' specific property interests as a matter of course in adjudicating these claims. *Del–Rio Drilling Programs, Inc. v. United States,* 146 F.3d 1358, 1364 (Fed.Cir.1998); *see, e.g., Preseault v. United States,* 100 F.3d 1525, 1534–37 (Fed.Cir.1996) (en banc); *M & J Coal Co. v. United States,* 47 F.3d 1148, 1154 (Fed.Cir.1995); *Mitchell Arms, Inc. v. United States,* 7 F.3d 212, 215–17 (Fed.Cir.1993); *Yaist v. United States,* 228 Ct.Cl. 281, 286–87, 656 F.2d 616 (1981); *Foster v. United States,* 221 Ct.Cl. 412, 419–20, 607 F.2d 943 (1979); *Bourgeois v. United States,* 212 Ct.Cl. 32, 35, 545 F.2d 727 (1976); *Cane Tenn., Inc. v. United States,* 44 Fed.Cl. 785, 789–90 (1999). "This determination must be made on the basis of the particular facts of each case." *Minneapolis Post Office Rifle & Pistol Club v. United States,* 32 Fed.Cl. 562, 566 (1995).

■ There are exceptions, however, to this general exercise of jurisdiction. The court will refrain from determining title to lands when the agency involved in a takings claim has already made such determination in a formal adjudicatory proceeding. *Aulston v. United States,* 11 Cl.Ct. 58, 60 (1986) (*Aulston I*), *vacated on other grounds,* 823 F.2d 510, 515 (Fed.Cir.1987) (*Aulston II*) (holding that a specific decision over a claimant's rights by the Interior Board of Land Appeals (IBLA) could not be directly challenged in a takings action in this court). This court treats the formal adjudication of a plaintiff's claims by an executive agency as "quasi-judicial," and therefore "determinative of the rights in issue and ... binding upon the parties unless reviewed and reversed by a court of competent jurisdiction." *Aulston I,* 11 Cl.Ct. at 62. In such a situation, the challenge to the agency's adjudication must go to district court, usually under the provisions of the Administrative Procedure Act, 5 U.S.C. § 701–706 (1994). *See Aulston II,* 823 F.2d at 515. On the other hand, when an agency merely takes action that adversely affects a claimant, and does not conduct a formal adjudication, the action may be challenged in this court when it is pertinent to a determination of that claimant's property interest in a takings claim. *Del–Rio,* 146 F.3d at 1364–67 (citing *United Nuclear Corp. v.*

*United States,* 912 F.2d 1432 (Fed.Cir.1990)). The court will exercise its full jurisdiction over takings claims especially in cases where review of an agency's actions, adjudicatory or otherwise, is not available in another court due to statutory limits on jurisdiction. *See Del–Rio,* 146 F.3d at 1367.

■ In this case, the full and fair consideration of plaintiffs' claims requires the court to determine whether plaintiffs actually held title to the lands recently fenced in as part of the Reservation. Although BLM certainly has made a decision concerning the disputed strips of land, its decision was not the result of formal adjudication by a body appointed specially to handle petitioned claims in a judicial or quasi-judicial proceeding. Instead, BLM simply conducted a resurvey of the lands and boundaries at issue and determined in that resurvey that the strips of land were in fact part of the Reservation. This determination does not deserve special deference from the court. *See Yaist v. United States,* 228 Ct.Cl. at 285, 656 F.2d 616; *Bourgeois v. United States,* 212 Ct.Cl. at 35, 545 F.2d 727. Because this court has the general jurisdiction to determine the scope of a claimant's property interest, it will undertake to do so. *See, e.g., Hage v. United States,* 35 Fed.Cl. 147, 159 (1996).

■ Defendant argues, nevertheless, that despite the court's established competence to determine title in takings cases, a claimant may dispute title over lands with the government only through the provisions of the QTA. The QTA is the sole source of the government's waiver of sovereign immunity with regard to claims for title of real property adverse to government interest in such property. *Block v. North Dakota,* 461 U.S. 273, 286, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983). Regarding claims to quiet title in claimants against Indian lands, however, the QTA expressly declines to extend such a waiver, forbidding suit against the government on those types of claims. 28 U.S.C. § 2409a. The exception of Indian lands from the QTA's waiver provision was included due to the government's important policy interest in honoring its obligations and agreements with Indian tribes regarding lands for reservations. *United States v. Mottaz,* 476 U.S.

834, 847, 106 S.Ct. 2224, 90 L.Ed.2d 841 (1986) (quoting *Block,* 461 U.S. at 284–85, 103 S.Ct. 1811). Although the QTA is the only avenue to a quiet title action against the United States, the QTA does not apply to and will not affect "actions which may be or could have been brought under [the Tucker Act, 28 U.S.C. § ] 1491 ...." 28 U.S.C. § 2409a(a); *see Bourgeois,* 212 Ct.Cl. at 35, 545 F.2d 727; *Yaist,* 228 Ct.Cl. at 286–87, 656 F.2d 616.

Plaintiffs first brought suit for quiet title in district court in California. The court held that the QTA applied to the claims, and therefore, due to the Indian lands exception, it could not decide on plaintiffs' claims, as they involved quieting title of Indian lands in private individuals. *Mannatt,* 951 F.Supp. at 174–75. It may seem that plaintiffs' suit before this court for inverse condemnation is simply a ploy to circumvent the restrictions contained in the QTA. It is clear, however, from the limitation of the applicability of the QTA residing in its own provisions, that separate courts will encounter the same issues of title in some instances. *Bourgeois,* 212 Ct. Cl. at 35, 545 F.2d 727; *Yaist,* 228 Ct.Cl. at 286–87, 656 F.2d 616. The fact that plaintiffs have filed in two separate courts does not rid this court of the ability to hear the claims. The Court of Appeals for the Federal Circuit (Federal Circuit) has held that in cases involving takings that include possible unlawful activity by government agency officials, the harm affecting a claimant is best seen as bisected, one harm representing the unlawful agency activity, and the other harm representing the taking of a property interest without compensation. *See First English Evangelical Church v. County of Los Angeles,* 482 U.S. 304, 319–22, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987), *cited in Del–Rio,* 146 F.3d at 1363–64. Each harm warrants its own cause of action, each in a different court. *Del–Rio,* 146 F.3d at 1364. This is precisely the reason why the district court saw fit to transfer plaintiffs' Fifth Amendment claims to this court. On their face, plaintiffs' claims are properly considered full-fledged takings claims, because they allege property interests which was taken by government agency

action, and therefore do not fall under the QTA.[2]

Defendant attempts to show that even if the QTA does not demand removal of these claims, this case is still a quiet title action in disguise, and therefore no valid takings claims exist before the court. Plaintiffs assert that defendant erred in its resurvey, and illegally took plaintiffs' lands; defendant therefore states that their claims are not for takings but for quiet title. Indeed, plaintiffs clearly contend that the resurvey results were unlawful, and that the effect of the resurvey was the illegal appropriation by the government of their rights to the use and control of the disputed property. Yet, this court and the Federal Circuit have held that a claimant must "concede the correctness of the government action that is alleged to constitute the taking." *Cooley v. United States,* 46 Fed.Cl. 538, 541 (2000) (quoting *Del–Rio,* 146 F.3d at 1365 (internal quotations omitted)). If a claimant brings what it calls a takings claim, but instead is suing in some way for the restriction of agency action, its claim is for equity, and does not belong in this court. *Cooley,* 46 Fed.Cl. at 541. Such a claim would assert an "unauthorized" action taken ultra vires by a government agency official. An allegation of an ultra vires act cannot give rise to a claim for compensation under takings jurisdiction. *Id.*

 Simply because a claimant has alleged an agency action to be unlawful, however, it will not divest the court of jurisdiction over the claim, nor will it cripple that claimant's takings claim before the court. *Del–Rio,* 146 F.3d at 1362–63. In addition,

an on-going dispute between a claimant and the government at the time of filing, concerning the claimant's belief that the government has unlawfully taken the claimant's property interest, will not doom a takings claim. *Id.* at 1365. This court and the Federal Circuit have never accepted "the proposition that the Court of Federal Claims loses jurisdiction to decide a takings claim whenever the government seeks to defend the agency action on the ground that the plaintiff lacks the property right on which its takings claim is based." *Id.; see Bourgeois v. United States,* 212 Ct.Cl. at 35–36 n. 1, 545 F.2d 727.

Here, plaintiffs argue that the resurvey of land by defendant on behalf of the reservation was unlawful, and there still exists a dispute as to plaintiffs' property rights. These facts do not divest the court of jurisdiction over plaintiffs' claims. Plaintiffs do not contend that defendant's actions were unauthorized: they do not claim that BLM is without authority to survey lands and determine proper boundaries. Instead, they argue the actions were improperly executed, resulting in unlawful action that caused the takings at issue. The mere existence of disagreement over whether plaintiffs ever had property interests that could be compensated will not and does not take the claims from this court. *See Del–Rio,* 146 F.3d at 1365.

 Defendant further maintains that plaintiffs should have exhausted all administrative remedies before proceeding to file suit in this court. When Congress has not specifically and clearly mandated exhaustion of administrative remedies, however, it is not a requirement of jurisdiction, but instead is

---

**2.** The court's determination of plaintiffs' property interests will not frustrate the purpose of the QTA and its prohibition of quiet title actions on Indian lands. Because the purpose of the QTA is to control only quiet title actions, plaintiffs' claims do not come within its purview. Also, the purpose for the exception of Indian lands from the QTA's waiver of sovereign immunity is not harmed by this court's determination, because no outcome in the present action before this court can adversely affect the lands held by the Indians. Plaintiffs are not asking for a change of property boundaries, but are instead asking for compensation from defendant, and not from the Indians, for the taking of their property: "[T]hrough ... a re-survey [defendant] has altered the historic reservation boundaries and has

taken more land. Plaintiffs should be compensated for this taking." Plaintiffs' Opposition to Motion to Dismiss at 24. In addition, because the district court in California found that it could exercise jurisdiction over neither the quiet title claims nor the inverse condemnation claims, this court is the only venue in which such determination of plaintiffs' property interests can be made. *See Del–Rio,* 146 F.3d at 1367. The presumption behind the *Aulston* line of cases in requiring a property interest to be determined elsewhere prior or to a institution of a takings claim in this court is that the determination can and will be made elsewhere. 823 F.2d at 515. The *Aulston* cases are therefore inapposite to the situation in this case.

"a matter for the exercise of 'sound judicial discretion.'" *Maggitt v. West,* 202 F.3d 1370, 1377 (Fed.Cir.2000) (quoting *McCarthy v. Madigan,* 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992)). The implementation of such discretion should be fashioned on congressional intent and the applicable statutory scheme. *McCarthy,* 503 U.S. at 144, 112 S.Ct. 1081. Specifically, the court should send a matter back to the agency when the agency has not been able to create a factual record, exercise its discretion, and apply its expertise. *McKart v. United States,* 395 U.S. 185, 194–95, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). A party need not exhaust its administrative remedies, however, if invoking such remedies would be futile. *Bendure v. United States,* 213 Ct.Cl. 633, 641, 554 F.2d 427 (1977); *Devon Energy Corp. v. United States,* 45 Fed.Cl. 519, 528 (1999) (holding a previous denial by BLM for drilling permits was final and appeal to the IBLA would be futile).

▆ The pertinent BLM regulation, 43 C.F.R. § 4.410(a) (2000), does not mandate exhaustion of administrative remedies. It remains then for the court to decide on the propriety of the application of the exhaustion doctrine. Although plaintiffs apparently had an administrative remedy to challenge the agency's action under this BLM regulation, the result of forcing the plaintiffs to go back to BLM would be wasteful. First, the resurvey itself is the product of the original dispute between plaintiffs and Mr. Miller, the individual on the Reservation responsible for moving the fence to exclude plaintiffs from the strips of land in dispute. There is no reason to believe that BLM will come to a different conclusion now. *See Bendure,* 213 Ct.Cl. at 641, 554 F.2d 427. The parties have been in contact for the duration of this dispute. Much time and effort have been spent on the issues involved, and BLM has used its expertise and skill to come to a conclusion that leaves the parties at an impasse. The court sees no benefit in sending this matter back to the agency.

In addition, for the court to return these claims to BLM would force plaintiffs, the agency, the district court in California, and this court to endure for a second time the process of agency decision, district court claim, transfer and subsequent filing in this court of a complaint for inverse condemnation. Once BLM made a formal adjudicatory decision, the rulings of the *Aulston* cases would apply, requiring any review of the decision to be undertaken by the district court in California. Again, the QTA would apply to the claims, precluding any relief to plaintiffs, and again the inverse condemnation claims would come to this court. The exhaustion doctrine must be applied in a way that does not frustrate the statutory scheme of this court's jurisdiction over takings claims under the Tucker Act. *See McCarthy,* 503 U.S. at 144, 112 S.Ct. 1081. The court therefore will not require exhaustion in this case.

Defendant finally charges that plaintiffs' claims are based solely on defendant's resurvey of the Indian lands, and that a survey alone does not and cannot create title in land, nor can it infringe the rights of bona fide property owners such as plaintiffs. Defendant supports this assertion by quoting a statutory provision concerning the resurvey of lands by the government: "[N]o such resurvey or retracement shall be ... executed as to impair the bona fide rights or claims of any ... owner of lands affected by such resurvey or retracement." 43 U.S.C. § 772 (1994). Defendant also refers to the general principle that "[a] survey does not create title; it only defines boundaries." *Russell v. Maxwell Land-Grant Co.,* 158 U.S. 253, 259, 15 S.Ct. 827, 39 L.Ed. 971 (1895).

▆ Although a survey, standing alone, does not affect title in real property, when the government improperly resurveys lands so as to enlarge its interest in the property, and then effectively takes the property, such resurvey plus the assertion of control of the property will constitute a taking by inverse condemnation. *Sioux Tribe of Indians of Lower Brule Reservation, S.D. v. United States,* 161 Ct.Cl. 413, 415, 315 F.2d 378 (1963). Despite the fact that the initial invasion of the Mannatt/Mather Lot was perpetrated by Mr. Miller, an inhabitant of the Reservation, defendant's resurvey creates a "sufficient direct and substantial United States involvement" to give rise to a taking. *Langenegger v. United States,* 756 F.2d 1565,

**156**

1571 (Fed.Cir.1985) (emphasis omitted). It is exactly this sort of misuse of the authority of the government to take resurveys that 43 U.S.C. § 772 prohibits. As alleged by plaintiffs, the resurvey of property would indeed indicate the existence of compensable takings.

Based on the discussion above, it remains for the court to make its determination concerning the scope of plaintiffs' property interests in the disputed lands. Although both sides to this litigation have provided some evidence as to the proper boundaries of plaintiffs' and defendant's respective properties, the court cannot at this time make a final decision on plaintiffs' specific property interests. As discussed above, however, the court does have jurisdiction to hear the takings claims brought by plaintiffs, including the determination of the scope of plaintiffs' title to the lands at issue. *See Del–Rio,* 146 F.3d at 1364.

### Conclusion

For the above-stated reasons, the court finds that plaintiffs have properly alleged takings claims, and that it has jurisdiction to determine whether plaintiffs have lost property interests subject to just compensation under the Fifth Amendment. Defendant's motion to dismiss is hereby denied. The parties are directed to file a joint status report by December 6, 2000, concerning further proceedings in this case.

IT IS SO ORDERED.

